UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDUL WASAE, <br><br>                    Plaintiff, <br><br>     v. <br><br> MARCO RUBIO[1], et al., <br><br>                    Defendants. | CASE NO. C24-1714-KKE <br><br> ORDER GRANTING MOTION TO DISMISS |

Plaintiff Abdul Wasae sues Defendants Marco Rubio and Consul General Holly Waeger Monster to compel a decision on his pending H-1B nonimmigrant visa application. Dkt. No. 1. Defendants argue the case must be dismissed because Wasae fails to establish a mandatory duty and because, even if there was such a duty, Wasae fails to establish the delay has been sufficiently unreasonable such that judicial intervention is appropriate. The Court finds that the specific allegations here support the existence of a mandatory duty but fail to support an unreasonable delay. Accordingly, the Court grants the motion to dismiss without leave to amend and dismisses the case without prejudice.

---

[1] Marco Rubio as Secretary of State is substituted as defendant in place of the original defendant, former Secretary of State Antony Blinken, under Federal Rule of Civil Procedure 25(d).

ORDER GRANTING MOTION TO DISMISS - 1

I.   BACKGROUND[2]

Wasae is a citizen of Pakistan.  Dkt. No. 1 ¶ 25.  He works as a Software Development Engineer II at Amazon, Inc.  *Id.* ¶ 26.  He is employed under the H-1B status, which authorizes his employment through July 3, 2026.  *Id.*  Wasae applied for an H-1B visa by submitting a form DS-160 online.  *Id.* ¶ 28.  Then, on March 11, 2024, "Wasae traveled to Canada so he could obtain an H-1B visa in his passport."  *Id.* ¶ 27.  The next day, at his visa interview at the U.S. Consulate in Calgary, the consulate issued a 221(g) refusal notice.  *Id.* ¶ 29.  The officer requested a resume and university transcripts, which were provided.  *Id.*  On March 14, the consulate emailed Wasae requesting a DS-5535 Supplemental Questions for Visa Applicants which Wasae submitted the next day.  *Id.* ¶ 30.

Despite attempts by Wasae and public officials to gain information into the status of Wasae's visa application, "[h]e has received no information other than boilerplate responses informing him that his application is still undergoing mandatory administrative processing."  Dkt. No. 1 ¶¶ 32–33.  Wasae alleges this delay in processing his visa has forced him to return to Pakistan to await a decision and negatively impacted his professional, economic, and physical well-being.  *Id.* ¶¶ 31, 34–37.

On October 17, 2024, Wasae filed this lawsuit against the U.S. Secretary of State and Consul General of the U.S. Consulate in Calgary.  Dkt. No. 1.  Wasae brings causes of action for a writ of mandamus under 28 U.S.C. § 1361 and for violation of the Administrative Procedures Act ("APA") (5 U.S.C. §§ 555(b), 706(1)).  *Id.* ¶¶ 58–77.  Defendants now move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) because (1) Defendants "performed the non-discretionary duty at issue here by refusing the visa application[,]" and (2) any delay is not

---

[2] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all well-pleaded factual allegations as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

ORDER GRANTING MOTION TO DISMISS - 2

unreasonable. Dkt. No. 9 at 2. Wasae opposes the motion (Dkt. No. 14), Defendants replied (Dkt. No. 15), and Wasae submitted supplemental authority (Dkt. No. 16). Neither party requested oral argument, and the matter is ripe for the Court's consideration.

## II.  ANALYSIS

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

### A.  Legal Standards

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, if the facts alleged are true, plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Generally, the Court looks to the face of the complaint, and documents attached to the complaint, to decide a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). Thus the Court will consider the complaint (Dkt. No. 1) and the two attachments provided, identified as Exhibit A and Exhibit B in the complaint (Dkt. Nos. 1-1, 1-2).[3]

Wasae submits three more exhibits with his opposition to the motion to dismiss. Dkt. Nos. 14-1, 14-2, 14-3. Defendants do not object to their incorporation, and they are referenced in the complaint (Dkt. No. 1 ¶¶ 32, 33), so the Court will consider them.

---

[3] The complaint references an Exhibit D, but no such document was filed. *See* Dkt. No. 1 ¶ 75.

**B.      The Motion to Dismiss Is Granted.**

Wasae sues Defendants under two statutes: the Mandamus Act "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff" (28 U.S.C. § 1361) and the APA wherein a court shall "compel agency action … unreasonably delayed" (5 U.S.C. § 706(1)). Dkt. No. 1 ¶¶ 58–77. Because "mandamus relief and relief under the APA are 'in essence' the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, we may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (quoting *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997)); *see also Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (The Supreme Court "has construed a claim seeking mandamus under the [Mandamus Act] 'in essence,' as one for relief under § 706 of the APA.") (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).

"[A] court may compel [delayed] agency action under the APA when the agency (1) has 'a clear, certain, and mandatory duty' and (2) has unreasonably delayed in performing such duty." *Vaz*, 33 F.4th at 1136 (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021)). Defendants argue Wasae fails to support either element.

1.   <u>Wasae sufficiently alleges Defendants have not fulfilled their mandatory duty.</u>

The parties agree that to state a claim for unreasonable delay under the APA, Wasae must allege "a specific, unequivocal command placed on the agency to take a discrete agency action, and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (cleaned up); Dkt. No. 9 at 5, Dkt. No. 14 at 1–3. The parties also agree that Defendants have "a mandatory, non-discretionary duty to adjudicate a properly executed visa application." Dkt. No. 15 at 3, *see also* Dkt. No. 14 at 1 (citing 8 U.S.C. § 1202(d)). But the parties disagree about whether this duty is fulfilled upon refusal of a visa application followed by

further administrative processing. *See* Dkt. No. 9 at 5–15, Dkt. No. 14 at 4–9, Dkt. No. 15 at 5. Courts within and outside the Ninth Circuit have come to opposing conclusions on this issue. *See Momeni v. Blinken*, No. 2:24-cv-04879-ODW (AGRx), 2024 WL 5112234, at *4 (C.D. Cal. Dec. 13, 2024) (explaining the split amongst courts in the Ninth Circuit on this issue).

This question was squarely addressed in a recent order in this district by the Honorable Barabara J. Rothstein. *Khosravi v. Rubio*, No. 2:24-cv-1227, 2025 WL 821885 (W.D. Wash. Mar. 14, 2025). That case presented very similar facts to the issues before this Court. There, the Plaintiff filed a visa petition for her Iranian father, Mr. Khosravi, to come to the United States and, after an interview at the consulate in Turkey, the consular officer issued a 221(g) refusal notice and requested additional information. *Id.* at *1. Mr. Khosravi provided the requested information and for nine months his application remained in administrative processing. *Id.* at *2. After defendants moved to dismiss the case for failing to identify an unfulfilled mandatory duty, Judge Rothstein held that the APA and its implementing regulations require review and adjudication of visa applications. *Id.* at *3 (citing 5 U.S.C. § 555(b); 22 C.F.R. § 42.81(a)). Judge Rothstein then explained that this duty remained unfulfilled because "[w]hile nominally 'refused,' Khosravi's application is, by most other indications, still in the adjudicative process." *Id.* at *4 (citing evidence of continued "administrative processing").

The same rationale applies here. Like in *Khosravi*, Wasae alleges his application has been refused but that communications from officials confirm it is still in the adjudicative process (Dkt. No. 1 ¶¶ 32, 33), that he provided all requested information (*id.* ¶ 30), that processing is "ongoing" (Dkt. No. 14-1 at 1), and that he will "receive another adjudication once such processing is complete" (Dkt. No. 14-3). Finally, as in *Khosravi*, Wasae has been told that he will be contacted when "an update on the status of [his] application is available." Dkt. No. 14-1; *see Khosravi*, 2025

ORDER GRANTING MOTION TO DISMISS - 5

WL 821885, at * 4 (citing the same language as "[f]urther supporting the conclusion that the application has not actually been adjudicated").

Accordingly, the Court adopts and incorporates Judge Rothstein's well-reasoned analysis and joins the majority of district courts holding that a visa application has not been adjudicated when it has been refused but remains subject to ongoing "administrative processing." *Khosravi*, 2025 WL 821885, at *4–5 (Section III(B)(1)(b)) ("However, the 'majority view'—and the more persuasive one—is that the initial refusal of a visa application pending 'administrative processing' does not discharge the consular duty to adjudicate a visa application.") (collecting cases holding same). Thus, because Wasae's visa application remains in processing limbo, Defendants have not fulfilled their mandatory duty under the APA to "adjudicate" his application.

2. <u>Wasae does not sufficiently allege an unreasonable delay.</u>

Defendants also argue Wasae fails to adequately allege that adjudication of his application has been unreasonably delayed. Dkt. No. 9 at 15–16, Dkt. No. 14 at 13. The Ninth Circuit applies "the six-factor balancing test announced in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ('TRAC')" to determine whether an agency has performed its duty within a reasonable time under the APA. *Vaz*, 33 F.4th at 1137. In the visa context, the six TRAC factors are "grouped into four basic inquiries":

> "First, is there any rhyme or reason—congressionally prescribed or otherwise—for [an agency]'s delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the [agency] to act (factors three and five)? [Third], how might forcing the agency to act thwart its ability to address other priorities (factor four)?" Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Infracost Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1254 (quoting *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 161 (D.D.C. 2022)).

Wasae argues the TRAC analysis is premature because "Defendants here have not provided this Court with any evidence to assess the delay[.]" Dkt. No. 14 at 12. But Wasae does not specify

ORDER GRANTING MOTION TO DISMISS - 6

what information would be necessary to complete this analysis. While some courts do reserve consideration of unreasonable delay until after the pleadings stage (Dkt. No. 14 at 11–12 (collecting cases[4])), many do not (Dkt. No. 9 at 16 (collecting cases[5]), Dkt. No. 15 at 8–10 (collecting cases)). Even though the ultimate question of whether there has been unreasonable delay is best reserved for later in the proceedings (*see* Dkt. No. 14 at 11–12), at the motion to dismiss stage the Court still must determine whether the facts alleged, taken as true, could plausibly support an unreasonable delay claim under the APA. *See Infracost*, 732 F. Supp. 3d at 1253–54. Accordingly, the Court will evaluate the TRAC factors as they apply in the visa context.

For the first inquiry, the Court considers the length of delay in light of any established time limits and the reason for any delay. The length of delay is approximately 13 months which courts generally do not find unreasonable. *See Infracost*, 732 F. Supp. 3d at 1254–55 (collecting cases that support 14-month delay is not unreasonable), *Khosravi*, 2025 WL 821885, at *6 (collecting cases that support 16-month delay is not unreasonable). Wasae's authority finding delays of less time unreasonable are distinguishable. *See Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006) (explaining the reasonableness of delay "varies according to the circumstances of each particular case" and identifying specific facts regarding the visa applicant's history that "make the Government's delay even more unreasonable"); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 294 (D.D.C. 2016) (statutory requirement for at-issue visa to be processed within nine months). There are no established time limits on when an H1-B visa must be adjudicated. While courts may consider the "sense of Congress" language in 8 U.S.C. § 1571(b) that nonimmigrant benefits

---

[4] *See, e.g.*, *Durham v. Blinken*, No. CV 24-02868 PSG (MRWX), 2024 WL 3811146, at *5 (C.D. Cal. Aug. 8, 2024) ("Although the parties have briefed a TRAC factors analysis, the Court finds it inappropriate to conduct the fact-analysis at this stage.").

[5] *See, e.g.*, *Chang v. United States Dep't of State*, No. C23-01918-RSM, 2024 WL 3161895, at *3 (W.D. Wash. June 25, 2024).

ORDER GRANTING MOTION TO DISMISS - 7

"should be processed not later than 30 days after the filing of the petition[,]" the Ninth Circuit does not find this language establishes a strict timeline such that longer delays are unreasonable. *Infracost*, 732 F. Supp. 3d at 1255–56. As to the reason for delay, Wasae alleges that Defendants are still considering his DS-5535 (Dkt. No. 1 ¶ 30), thus "this is not a case where there is no identifiable rationale behind Defendant[s'] delay; the [Defendants] appear[] to have needed additional information to reach a decision." *Infracost*, 732 F. Supp. 3d at 1255. Together, the first set of factors weighs in Defendants' favor and does not demonstrate an unreasonable delay. *Id.* at 1254–56.

The second inquiry, the impact of the delay on Wasae, also does not support a finding of unreasonable delay because Wasae's alleged hardships relate to financial, professional, and anxiety-related harm. Dkt. No. 1 ¶¶ 31, 34–37, 51. While the Court has no reason to doubt the toll this delay has taken on Wasae, and is sympathetic to the serious and regrettable impacts on his well-being, these impacts are felt by every nonimmigrant visa applicant and do not warrant a finding of unreasonable delay based on "human health and welfare." *Chang v. United States Dep't of State*, No. C23-01918-RSM, 2024 WL 3161895, at *3 (W.D. Wash. June 25, 2024) (finding no unreasonable delay on a motion to dismiss for an Amazon employee awaiting an L-1B visa).

The information relevant to the third inquiry (impact on agency priorities) is limited. But at the motion to dismiss stage, the Court can assume that ordering Wasae's relief would "necessarily come at the expense of other similarly situated applicants." *Infracost*, 732 F. Supp. 3d at 1256–57 (cleaned up); *see also* Dkt. No. 1 ¶ 39 (acknowledging the high number of visa applications in process). Thus, this inquiry also does not support a finding of unreasonable delay.

Finally, for the fourth inquiry, Wasae does not allege any impropriety by Defendants specific to him. Accordingly, this inquiry is neutral. *See TRAC*, 750 F.2d at 80.

In total, the circumstances alleged here, taken as true, do not support a finding of unreasonable delay such that that judicial intervention is required. *See, e.g.*, *Khosravi*, 2025 WL 821885, at *5–8 (finding insufficient unreasonable delay allegations when relative visa was refused and placed in administrative processing for 16 months); *Aminzadeh v. Blinken*, No. 2:24-CV-02025-DSF-MRW, 2024 WL 3811153, at *5–8 (C.D. Cal. Aug. 9, 2024) (failure to allege unreasonable delay when case was filed seven months after relative visa was refused and placed in administrative processing).

Accordingly, though the Court does not take lightly the impact of this delay on the Plaintiff, for the reasons stated above, the Court nonetheless dismisses the case. The Court will not grant leave to amend, as Wasae does not request it and there is no indication that additional facts would change the outcome. But the Court dismisses the case without prejudice "because additional delay could at some point ripen into an unreasonable delay." *Aghchay v. United States Dep't of State*, No. CV 22-5708 PA (PVCX), 2022 WL 19569516, at *3 (C.D. Cal. Dec. 20, 2022). As recognized by other district courts in similar circumstances, "[t]hough judicial intervention is not warranted at this juncture, the Court's calculus could change if the delay continues for a more extended period." *Infracost*, 732 F. Supp. 3d at 1258.

### III.  CONCLUSION

Defendants' motion to dismiss is GRANTED. Dkt. No. 9. The case is dismissed without prejudice. The Clerk is instructed to close the case.

Dated this 15th day of May, 2025.

Kymberly K. Evanson
United States District Judge